**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CARL JACOBS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-826-STE** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.      **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-25). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 10, 2018, the amended alleged onset. (TR. 17). At step two, the ALJ determined Mr. Jacobs suffered from the following severe impairments: obesity; degenerative disc disease; paroxysmal supraventricular tachycardia; irritable bowel syndrome; right shoulder disorder; major depressive disorder; personality disorder; and generalized anxiety disorder. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18).

At step four, the ALJ concluded that Mr. Jacobs retained the residual functional capacity (RFC) to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead with his right upper extremity. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can relate to others on a superficial work basis. The claimant can adapt to a work situation. 20 CFR 404.1567(b).

(TR. 20).

With this RFC, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (TR. 23). Thus, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 51). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 51-52). The ALJ then adopted the VE's testimony and concluded, at step five, that that Mr. Jacobs was not disabled based on his ability to perform the identified jobs. (TR. 24).

## III.   ISSUE PRESENTED

On appeal, Plaintiff alleges error in the ALJ's evaluation of medical opinions. (ECF No. 12:5-13).

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. THE ALJ'S CONSIDERATION OF THE CONSULTATIVE EXAMINERS' REPORT

On May 11, 2019, Plaintiff's underwent a physical consultative examination by Drs. John Schipul and Emily Grewe-Nelson. (TR. 445-455). The physicians recognized that Mr. Jacobs had reported a history of work-related arthritis in his back since 2012 and work-related left-hand problems since May of 1999. (TR. 445-446). In examining Plaintiff, the physicians noted 4/5 finger abduction on Plaintiff's left hand, left-hand weakness, and pain with range of motion in Mr. Jacobs' back. (TR. 449, 454). As a result, the physicians concluded: "[Plaintiff's] [p]ossible limitations would be performing any movements with the left hand . . . [and] possibl[e] limit[ations] [in] his ability to work at a job lifting or carrying things for long periods of time." (TR. 449).

In the administrative decision, the ALJ discussed the findings from Drs. Schipul and Grewe-Nelson, stating:

> Additionally, the consultative examination was also largely normal with findings of regular heart rate and rhythm without murmurs, rubs, or gallops, and some pain with range of motion testing in the back, but otherwise normal range of motion in the shoulders, elbows, 5/5 muscle strength in all extremities, and normal gait (B5F).

(TR. 21). Mr. Jacobs alleges error in the ALJ's failure to properly evaluate the report. The Court agrees.

4

### A.      Governing Legal Definitions and Regulatory Standards

The Social Security Administration has defined categories of evidence, including, as pertinent here, "medical opinions," and "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(2), (3). The regulations define a "medical opinion" as "a statement from a medical source about what an applicant can still do despite his impairment(s) and whether he has one or more impairment-related limitations involving the:

> (A) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Ability to perform other demands of work, such as seeing, hearing, or using other senses; or the
>
> (D) Ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In doing so, 20 C.F.R. § 404.1520c provides that the ALJ must articulate how persuasive he finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to

determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(1).

In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Finally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

The regulations define "other medical evidence" as "including judgments about the nature and severity of [a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3); *Duran v. Berryhill*, No. CIV-18-50, 2019 WL 1370101, *9 (D. N.M. March 26, 2019) (report

6

containing results and interpretation of standardized tests, a summary of information claimant provided in a behavioral rating, diagnoses and recommendations were not medical opinions under 2017 regulations). When evaluating "other medical evidence" the ALJ is not required to consider the "medical opinion" factors listed above. *See supra*; *see M.H. v. Kijakazi*, No. 1:21-CV-01797-CNS, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023) ("The ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency.").

### B.   Error in the ALJ's Consideration of the Consultative Examiner's Report

As mentioned, Drs. Schipul and Grewe-Nelson stated: "[Plaintiff's] [p]ossible limitations would be performing any movements with the left hand . . . [and] possibl[e] limit[ations] [in] his ability to work at a job lifting or carrying things for long periods of time." (TR. 449). The governing issue in this case is whether these statements qualified as "medical opinions" as set forth in 20 C.F.R. § 404.1513(a). If so, the ALJ clearly erred by failing to mention the findings and related limitations, and explaining whether he deemed them persuasive by evaluating the factors of "supportability" and "consistency."

The Commissioner argues that the statements do not qualify as medical opinions, but the Court disagrees, but only with respect to the limitations concerning Plaintiff's hand. As noted by Plaintiff, the statement relating to Plaintiff's hand: (1) is from a medical source(s), (2) relates to what Mr. Jacobs can still do, and (3) describes specific work-related limitations. *See* ECF No. 20:3. On the other hand, the statement that Plaintiff

would be limited in "lifting or carrying things *for long periods of time*"[1] is not sufficiently specific regarding a particular limitation to qualify as a medical opinion. *See Cory G. v. Kijakazi*, No. 2:21-cv-00569-JNP, 2023 WL 2570025, at *3 (D. Utah Mar. 20, 2023) (noting that a physician's diagnosis "failed to "detail[] any limitation with particularity . . . which would be necessary to qualify as a 'medical opinion.'").

The Commissioner argues that the statement regarding Plaintiff's hand is speculative and that the word "possible" somehow exempts the statement from qualifying as a "medical opinion." (ECF No. 19:6-9). The cases from this Circuit that Ms. Kijakazi relies on in support of this argument are unpersuasive.

First, in *McNeill v. Saul*, No. CIV-20-305, 2021 WL 1401496 (N.D. Okla. Apr. 14, 2021), the Court found no error in the ALJ's evaluation of findings from a consultative examiner, because the findings "d[id] not indicate a particular work-related limitation." *Id.* at *4. But here, as discussed, the work-related limitation regarding Plaintiff's hand is clear—the physicians stated that Plaintiff should not perform any movements with his left hand. *See* TR. 449. As noted by Plaintiff, the word "possible" modifies the statement only to the extent of *how* the opinion should be considered when the ALJ evaluates it's "supportability"—i.e.—by examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion are persuasive. 20 C.F.R. § 404.1520c(c)(1).

Second, in *Moua v. Colvin*, 541 F. App'x 794 (10th Cir. 2013), the plaintiff argued that although the ALJ assigned "great weight" to a non-examining physician's opinion, he

---

[1] (TR. 449) (emphasis added).

ignored a statement that: "[s]ome reaching and fingering may be limited on the Left." *Id.* at 794. Although the Court found no error, because the statement "described only a possible limitation," the holding was based on whether the limitation was properly excluded, even though the statement was considered as an opinion and was otherwise analyzed appropriately under the regulations. Here, however, the statement was not even considered as a medical opinion in the first instance and was not considered under 20 C.F.R. § 404.1520c.

Defendant also attempts to excuse the ALJ's failure to evaluate the opinion by relying on notations from State Agency physicians that "[t]here is no indication that there is a medical opinion from any medical source [in Plaintiff's medical file]." (ECF No. 19:8, citing TR. 92-93, 108-109). But the ALJ himself did not rely on these statements in his decision and the Court may not do so now. *See Haga v. Astrue,* 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner.").

Finally, the Commissioner argues that assuming, *arguendo*, that the ALJ erred in failing to evaluate the opinion, any error was harmless because the ALJ did not find that Mr. Jacobs had a "medically determinable impairment" involving his left hand the RFC did not include any specific limitations using the left hand. (ECF No. 19:9). The Court disagrees.

The Tenth Circuit has held that harmless error may be appropriate in circumstances "where, based on material that ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). According to the Commissioner, because the ALJ failed to deem Plaintiff's left hand as a "medically determinable impairment," he was under no obligation to consider the opinions of Drs. Schipul and Grewe-Nelson. But the Commissioner's argument is illogical—it is the ALJ's failure to consider the opinion in the first instance which is the problem. Had the ALJ done so, he may have deemed the hand impairment "medically determinable" and included related limitations in the RFC. The failure is especially concerning because Plaintiff testified to having problems with his hand,[2] and at the outset of the hearing, Mr. Jacobs' attorney specifically stated that Plaintiff's severe impairments included "a problem with his left hand." (TR. 37).

In sum, the Court finds that the statement from Drs. Schipul and Grewe-Nelson qualify as "medical opinions." As such, the ALJ was required to evaluate the persuasiveness of the opinion, including the factors of "supportability" and "consistency." *See supra*. The ALJ failed to do so and the failure constitutes reversible error.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties.

---

[2] *See* TR. 47.

Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 22, 2023.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE